IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. H-13-391-1 |
| | § | |
| JOSE LUIS HURTADO QUINONES, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
INDICTMENT WITH PREJUDICE**

**I.     The Motion**

The defendant, Jose Hurtado Quinones, has moved to dismiss the indictment, issued on June 26, 2013, (Docket Entry No. 1), on the ground that it was filed after the Speedy Trial Act's 30-day deadline, (Docket Entry No. 11). The issue is when the 30-day period began to run. For the reasons set out below, the court finds that it began to run on May 19, 2013, making the indictment untimely under the Speedy Trial Act. The case is dismissed. Because the delay is the fault of the government, the dismissal is with prejudice.

On May 19, 2013, U.S. Customs and Border Protection officers at Houston Intercontinental Airport detained Hurtado Quinones on the suspicion that he had used an altered visa to attempt to enter the United States and that he had previously been deported. Hurtado Quinones argues that on May 19, a Customs and Border Protection officer presented the case to the U.S. Attorney's Office for possible prosecution for the fraudulent misuse of a visa, in violation of 18 U.S.C. § 1546, and for illegal reentry after removal, in violation of 8 U.S.C. § 1326. (Docket Entry No. 11, at 2). Hurtado Quinones argues that the U.S. Attorney's Office accepted the case for criminal prosecution

on May 19. If the 30-day period for indictment began to run on May 19, the deadline for indictment was June 19. Hurtado Quinones was not indicted until June 26. He asserts that he was detained before the indictment issued for the primary purpose of gathering evidence to prepare the criminal charges.

The government responds that the U.S. Attorney's Office did not accept the case for prosecution until June 12, 2013. The magistrate judge approved and signed the complaint and issued the arrest warrant on June 12. The following day, June 13, Hurtado Quinones was arrested and taken into U.S. Marshal custody. The government asserts that Hurtado Quinones was in administrative detention until the U.S. Marshals arrested him and took him into custody. (Docket Entry No. 13, at 2–5).

This court held an evidentiary hearing on August 6, 2013. Customs and Border Protection Enforcement Officers Fernando Guajardo and Robert Scarborough testified. Officer Scarborough had also testified in the preliminary hearing before the magistrate judge and submitted an affidavit as part of the government's response to the motion to dismiss. (Docket Entry No. 13-1). At the hearing, the government reiterated its argument that it had not accepted the case for prosecution until June 12. The government also argued that Hurtado Quinones was administratively detained from May 19 to June 13 in part to allow immigration authorities to interview him about his statement that he had a "credible fear" of harm to his children if he were removed.

## II. The Applicable Law

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial, and also to serve the public's interest in prompt criminal proceedings." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010). "Any information or indictment charging

an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). "An individual is 'arrested' under the Speedy Trial Act only when he is 'taken into custody after a federal arrest for the purpose of responding to a federal charge.'" *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 n.6 (5th Cir. 2000) (quoting *United States v. Johnson,* 815 F.2d 309, 312 (5th Cir.1987)); *accord United States v. Gardner*, 248 F. App'x 605, 607 (5th Cir. 2007) (per curiam). Failure to comply with the Act's 30-day time limit results in dismissal. 18 U.S.C. § 3162(a)(1); *De La Pena-Juarez*, 214 F.3d at 597. Whether the dismissal should be with or without prejudice turns on the court's determination of certain factors. *See* 18 U.S.C. § 3162(a)(1); *United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003).

Generally, the Act is not triggered by civil detention, including Customs and Border Protection administrative detention. *See De La Pena-Juarez*, 214 F.3d at 597–98; *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008) (adopting this rule and citing decisions of the First, Third, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits). This circuit and other circuits recognize what is known as the "ruse exception" to this general rule. *See Pasillas-Castanon*, 525 F.3d at 997 (adopting the exception and citing decisions of the First, Second, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits). Under the exception, "an INS arrest triggers the Speedy Trial Act's time clock where the administrative and criminal charges against the defendant are identical such that the detention is simply used as a substitute for criminal arrest." *De La Pena-Juarez*, 214 F.3d at 598 (citation and internal quotation marks omitted). Such a civil detention "is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based." *Id.* (quoting *United States v. Restrepo*, 59 F. Supp. 2d 133, 137 (D. Mass. 1999)). "The

mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the exception." *Pasillas-Castanon*, 525 F.3d at 998. Rather, the defendant must "demonstrate[ ] that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." *De La Pena-Juarez*, 214 F.3d at 598. "In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception." *Pasillas-Castanon*, 525 F.3d at 998.

Courts apply the ruse exception to protect defendants "against the possibility of collusion between federal criminal authorities and civil or state officials." *De La Pena-Juarez*, 214 F.3d at 598 (citation and internal quotation marks omitted). "[S]ome evidence of collusion to detain [the] defendant to facilitate his prosecution is still necessary even when the administrative and criminal charges are identical . . . ." *United States v. Pinto-Roman*, 337 F. Supp. 2d 781, 787 (E.D. Va. 2004); *accord United States v. Guevara-Umana*, 2006 WL 3335058, at *3 (E.D.N.Y. Oct. 27, 2006). Courts consistently decline to apply the exception if the record shows no indication of collusion. *See, e.g.*, *Pasillas-Castanon*, 525 F.3d at 998; *United States v. Rodriguez-Amaya*, 521 F.3d 437, 442 (4th Cir. 2008); *De La Pena-Juarez*, 214 F.3d at 599–600.

## III. Analysis

The government presented the sworn affidavit of Officer Scarborough in response to the motion to dismiss the indictment. Officer Scarborough stated that Hurtado Quinones was administratively detained from May 19 to June 12, 2013, when the case was presented to and accepted by the U.S. Attorney's Office. (Docket Entry No. 13-1, ¶ 6). But the documents admitted into evidence at the hearing show that Officer Guajardo signed a statement on May 19, 2013 stating that on that date, the "AUSA accepted the case for Criminal Prosecution." (Docket Entry No. 16-5,

4

Form I-213). Officer Scarborough acknowledged this when he testified at the hearing but described it as only a "tentative" acceptance. When Officer Scarborough testified under oath in the preliminary hearing held on June 14, he stated that the U.S. Attorney's Office accepted — with no reference to "tentative" — the case for criminal prosecution on May 19, 2013. Officer Scarborough's August 6 testimony that the U.S. Attorney's Office's May 19 acceptance was "tentative" is also inconsistent with a Customs and Border Protection document that Officer Guajardo sent to the U.S. Attorney's Office on June 12, 2013, which was admitted into evidence at the August 6 hearing. The document, marked as Government's Exhibit 2 to the response to the motion to dismiss, stated: "If Mexican, must indict on or before June 19, 2013." (Docket Entry No. 13-2). That document and date are consistent with, and support, the strong evidence that the U.S. Attorney's Office accepted the case for prosecution on May 19, 2013, as Hurtado Quinones contends, not on June 12.

The record also contains other evidence that the U.S. Attorney's Office accepted the case for prosecution for violations of 18 U.S.C. § 1546 and 8 U.S.C. § 1326 on May 19. This court reviewed *in camera* email correspondence between Officer Guajardo and the U.S. Attorney's Office. These documents — at least the portion showing the brief email exchange between the U.S. Attorney's Office and Officer Guajardo at Customs and Border Protection — are not subject to attorney-client privilege. First, Officer Guajardo and Officer Scarborough both testified about the communications with the U.S. Attorney's Office submitting the case for consideration for criminal prosecution. The government also submitted written documents showing communications from their office to the U.S. Attorney's Office. Second, an agency asking whether the U.S. Attorney's Office will accept a case for prosecution is not a confidential communication made for the purpose of obtaining legal advice

5

for the client agency. "[C]ommunication is protected by the attorney-client privilege if it is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential." *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) (alterations, citation, and internal quotation marks omitted). It is not uncommon for a law-enforcement agency to ask whether the government will prosecute, and the timing of that inquiry is routinely part of the Speedy Trial Act inquiry. *See, e.g.*, *United States v. Dyer*, 325 F.3d 464, 469 (3d Cir. 2003) ("[W]ithin 16 days of civil detention [by INS], the United States Attorney's Office accepted the case for prosecution; and within 41 days of civil detention Dyer was indicted."). It would not be reasonable for a law-enforcement officer to expect his inquiry to the U.S. Attorney's Office asking whether a case will be accepted for criminal prosecution, or the response to that inquiry, to be or remain confidential. The absence of privilege is particularly clear when, as here, the relevant communications are limited to whether the case would be accepted for prosecution and the date that decision was made. Finally, the communication by Officer Guajardo to the U.S. Attorney's Office was not privileged because it was not made to obtain legal advice or assistance for the agency or its officers. Instead, the communication was to ask the U.S. Attorney to decide whether he would prosecute Hurtado Quinones. There is no attorney-client privilege for the email correspondence from Officer Guajardo to the U.S. Attorney's Office asking if that office would prosecute, or for the email responding to the question.

The email from Officer Guajardo confirms the presentation of the case to the Deputy Criminal Chief of the Major Offenders Unit of the U.S. Attorney's Office on May 19, 2013. On the same date, the Deputy Criminal Chief responded to Officer Guajardo, stating that the U.S. Attorney's Office "will accept for prosecution." The word "tentative" does not appear. Because

the email exchange was submitted *in camera*, the government is ordered to produce it to the defendant and file a copy through CM/ECF. The email exchange may be redacted to show only the transmittal from Officer Guajardo and the response by the U.S. Attorney's Office.

Despite this May 19 acceptance, and the warning that the U.S. Attorney's Office "must indict by June 19," no indictment issued until June 26. Hurtado Quinones remained in custody throughout that period. Before June 12, the Criminal Enforcement Unit of Customs and Border Protection gathered evidence, including immigration files, judgment and conviction records, fingerprint comparisons, and other information. (Docket Entry No. 13-1, ¶¶ 6–7). Officer Scarborough testified in this court that the evidence was presented to the U.S. Attorney's Office on June 12. But contrary to his testimony, although the evidence gathered during Hurtado Quinones's detention was presented on that date, the case had already been presented to the U.S. Attorney's Office and accepted for prosecution on May 19.

The evidence is clear that the U.S. Attorney's Office accepted the case for prosecution on May 19. Officer Scarborough's affidavit denying that the case was accepted for prosecution before June 12, and his testimony before this court that the May 19 acceptance was "tentative," are not credible. The statements are themselves evidence of collusion. While it is insufficient to show that, when the civil detention began, the officers knew that Hurtado Quinones could have been criminally charged, this record shows much more. *See Pasillas-Castanon*, 525 F.3d at 998. Hurtado Quinones has presented strong and credible evidence that the decision to criminally prosecute him was made on May 19. His continued detention was a delay used to gather evidence for the criminal charges that the U.S. Attorney's Office had decided to bring more than 30 days before the indictment issued.

The government argues that Hurtado Quinones could have been detained awaiting removal

even if the case had not been accepted for prosecution on May 19 because he expressed a credible fear for his children if he was returned to Mexico. The record, however, does not support the argument that the primary reason for detaining Hurtado Quinones from May 19 to June 12 was to resolve the credible-fear issue. The record instead shows that during this period, the government gathered evidence for the criminal prosecution. There is no indication of any steps after the referral to the Asylum Office on May 19 toward resolving the credible-fear issue.

The documents include a May 2013 fax from Officer Guajardo to a legal specialist at the Houston Asylum Office. The attachments state: "[Hurtado Quinones] will be administratively processed as an Expedited Removal pending a credible fear interview by an Asylum officer. . . . Case is also being presented in the Southern District of Texas in Houston, Texas for possible Criminal Prosecution . . . ." Under the heading "Addendum," the attachments conclude: "On May 19, 2013 AUSA accepted the case for Criminal Prosecution." These attachments were faxed on May 19, 2013. (Docket Entry No. 16-5). There is no evidence of any action by the Asylum Office. The fact that on May 19, there was a referral for an interview based on Hurtado Quinones's reference to fear on his children's behalf if he were returned to Mexico is not inconsistent with the strong evidence that his criminal case was accepted for prosecution on the same date, triggering the 30-day period under the Speedy Trial Act, and that the primary activity during, and primary purpose of, the subsequent detention was to gather evidence for that prosecution.[1]

---

[1] On August 13, 2013, Hurtado Quinones filed an amended reply to the government's response to his motion to dismiss. (Docket Entry No. 17). The reply addresses the asylum argument the government raised at the hearing, Government Exhibits 6 through 10, (Docket Entry No. 16), and the documents reviewed *in camera*. Hurtado Quinones argues that the government waived the credible-fear arguments by not raising them timely and by not submitting the related documents until after the hearing. Hurtado Quinones argues that this court should not consider the documents or asylum argument, or should reopen the August 6 hearing to permit him to challenge the documents. But the documents do not undermine the conclusion that, contrary to the position of the U.S. Attorney's Office and the sworn testimony of Officer Scarborough, the case was

The evidence does not support the government's argument that even if the case had not been accepted for prosecution, Hurtado Quinones would have been detained until June 12 because of the credible-fear issue. Instead, the documents the government submitted support the conclusion that the primary purpose of the detention from May 19 to June 12 was to gather evidence to use in the criminal prosecution. The motion to dismiss, (Docket Entry No. 11), is granted. Whether to grant with prejudice depends on: "(1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice." *United States v. Blank*, 701 F.3d 1084, 1089 (5th Cir. 2012) (citing 18 U.S.C. § 3162(a)(2)); *accord* 18 U.S.C. § 3162(a)(1). "Delay attributable to . . . the government[ ] weighs in favor of dismissal with prejudice." *Id.* (citing *United States v. Peeples*, 811 F.2d 849, 851 (5th Cir. 1987); *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992); *United States v. Stayton*, 791 F.2d 17, 19–20 (2d Cir. 1986)). Even for serious offenses, dismissal with prejudice may be appropriate when the government caused the delay because doing so fosters prosecutorial diligence. *See, e.g.*, *Ramirez*, 973 F.2d at 38–39. In considering the impact of reprosecution, courts consider whether the delays are "likely to be repeated" and whether "prosecutorial misconduct and delay" would be deterred by barring reprosecution. *See, e.g.*, *United States v. Reames*, 40 F. App'x 861, 2002 WL 1611339, at *1 (4th Cir. 2002) (per curiam).

In this case, the factors weigh in favor of dismissal with prejudice. The offenses, while certainly not trivial, are everyday occurrences in this district. The delay between accepting the case

---

accepted for prosecution on May 19, as Hurtado Quinones contends. Nor do the documents show that Hurtado Quinones was detained from May 19 to June 12 for the primary purpose of resolving his credible fear of deportation or otherwise undermine the conclusion that the primary purpose of the detention was to gather evidence for his prosecution. There is accordingly no need to reopen the August 6 hearing or to preclude consideration of the documents.

9

for criminal prosecution and issuing the indictment appears to be due to the U.S. Attorney's Office. The fact that the government submitted an affidavit and presented testimony by a Customs and Border Protection officer that is contradicted by the written record and by the officer's own prior testimony is further support for dismissal with prejudice.

The motion to dismiss the indictment with prejudice is granted.

SIGNED on August 19, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge